THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANCIS TRICKEL and MARY      :
TRICKEL,                       :
                               :
            Plaintiffs,        :        3:14-CV-1916
     v.                        :        (JUDGE MARIANI)
                               :
DISCOUNT GOLD BROKERS, INC., et al. :
                               :
            Defendants.        :

**MEMORANDUM OPINION**

I. INTRODUCTION

On September 30, 2014, Plaintiffs Francis Trickel and Mary Trickel, (the "Plaintiffs"

or the "Trickels"), filed a complaint, (the "Complaint"), in this district against defendants

Discount Gold Brokers, Inc., Discount Metal Brokers, Inc., Michael Scott Berman, Marivic

Berman, Donald L. Dayer, Katherina Dayer, Robert Figaro, and Gregory Scott Hecht.  (Doc.

1).  Two additional defendants, Gregory S. Hecht Inc. and Aneleh Christine Dayer, (together

with the aforementioned defendants, the "Defendants"), were later added as parties to the

litigation.  (Docs. 33, 58).[1]  On December 23, 2015, Magistrate Judge Carlson issued a

Report and Recommendation, (Doc. 71), in which he recommended that this Court grant the

Plaintiffs' Motion for Entry of Default, (Doc. 63), and Motion for Default Judgment, (Doc. 65)

---

[1] On October 7, 2015, civil action *Francis W. Trickel et al. v. Aneleh Christine Dayer et al.*, No. 3:15-cv-1307 (M.D. Pa. 2015) was consolidated with and merged into the current matter by Order of this Court. (Doc. 58).

as to certain defendants.  On September 26, 2016, in accordance with Judge Carlson's

recommendation, a Judgment was entered against defendants Discount Gold Brokers, Inc.,

Discount Metal Brokers, Inc., Michael Scott Berman, Marivic Berman, Donald L. Dayer,

Katherina Dayer, Aneleh Christine Dayer, Robert Figaro, and Gregory S. Hecht, Inc., (the

"Judgment Defendants").  (Doc. 138).  On January 15, 2020, defendant Gregory Hecht was

dismissed from the litigation pursuant to Fed. R. Civ. P. 41(a)(2).  (Doc. 352).

Presently before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs for the

above-captioned action.  (Doc. 367).  For the reasons set forth below, the Court will grant

the Plaintiffs' request in part and award an adjusted amount in attorneys' fees and costs.

## II. PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

The current action was brought by an elderly couple, Plaintiffs Francis and Mary

Trickel, who have been married for over 50 years and were allegedly "bilked by the

defendants out of more than a quarter million dollars of their hard earned [sic] retirement

savings."  (Doc. 1 at ¶ 1).  According to the Plaintiffs, the Defendants "participated and/or

conspired with, or aided and abetted ... in a Ponzi and money laundering scheme that

targeted and ripped-off hundreds of individuals across the United States of America, many

of whom are senior citizens."  (Id. at ¶ 2).  The Defendants' alleged Ponzi scheme involved

enticing seemingly helpless victims to purchase "precious metals," after which the

Defendants would deliver only a fraction of the ordered metals but retain a larger

percentage of the purchase price for themselves while claiming they were unable to fulfill the remainder of the order in question.  (Id. at ¶ 3).

In October 2013, after seeing several advertisements circulated by defendant Discount Gold Brokers, which "emphasized the safety and stability of gold and silver as an investment" that the Defendants would sell "zero percent above dealer's cost," Mr. Trickel called the toll-free number to place an order for coins and made two payments totaling $226,258.80 in consideration of the order.  (Doc. 1 at ¶¶ 4-5).  The Defendants confirmed by email on October 17, 2013, that they received the Plaintiffs' order, and on October 21, 2013, that they received the Plaintiff's payment.  (Id. at ¶¶ 38-40).  A week later, on October 28, 2013, the Plaintiffs received a call from defendant Hecht, who further convinced them to adjust their purchase, after which the Plaintiffs were provided an updated invoice.  (Id. at ¶¶ 41-42).

Thereafter, the Defendants informed the Plaintiffs that the ordered coins should be delivered within two to four weeks after the Plaintiffs' payment cleared, but no such delivery arrived within the specified time period.  (Doc. 1 at ¶ 5).  As a result, the Plaintiffs attempted to contact the Defendants on several occasions over the following two months regarding any expectation for delivery of their ordered metals, but the Plaintiffs failed to receive any response from the Defendants regarding their order.  (Id. at ¶ 46).  On January 10, 2014, the Plaintiffs received a delivery of silver coins worth approximately $12,500.00.  (Id. at ¶ 6). The Plaintiffs, already suspicious of the Defendants' activities, opened the package of coins

in the presence of their attorney and videotaped the process. (Id. at ¶ 59). This delivery, however, was the only delivery of coins or any other product the Plaintiffs received from the Defendants and was sufficiently short in value of the roughly quarter of a million dollars paid by the Plaintiffs to the Defendants. *See* (Id.).

On January 29, 2014, the Plaintiffs' attorney sent a letter to the Defendants demanding the balance of the metals purchased to be delivered, but the Defendants failed to respond or comply with this demand. (Doc. 1 at ¶ 63). From January through April 2014, the Plaintiffs also made numerous calls to the Defendants, all of which went unanswered and unreturned. (Id. at ¶ 61). These efforts to contact the Defendants were paired with communications between the Plaintiffs and the California Attorney General's Office, which detailed allegations of criminal activity perpetrated by the Defendants. (Id. at ¶¶ 68-69).

Though the Plaintiffs also filed consumer complaints with the Department of Justice and the Better Business Bureau, they eventually filed a complaint in this district alleging claims pursuant to the Racketeer Influences and Corrupt Organizations Act, ("RICO"), and other federal and state laws seeking to enjoin the Defendants from entering into or maintaining any interest or involvement in a RICO enterprise, ensure the Defendants account for all gains, profits or advantages derived from the violation of RICO, and direct the Defendants to return to the Trickels all funds stemming from their criminal activity directed against the Plaintiffs. *See* (Doc. 1 at 39). The Plaintiffs also sought relief in the form of treble damages as permitted by the RICO statute, as well as the "actual, compensatory,

consequential, and punitive damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs on the state law claims." (Id. at 40). Finally, the Plaintiffs looked to disgorge the Defendants of all profits and revenues from their RICO activities and make restitution to the Trickels. (Id. at 40-41).

After various filings by the Plaintiffs, this Court entered a default judgment "in favor of Plaintiffs Francis Trickel and Mary Trickel and against Defendants Discount Gold Brokers, Inc., Discount Metal Brokers, Inc., Michael Scott Berman, Marivic Berman, Donald L. Dayer a/k/a Lee Dayer, Katherina Dayer, Aneleh Christine Dayer, Robert Figaro, and Gregory S. Hecht, Inc. in the amount of $641,276.40, plus costs and attorneys' fees to be determined at a later date following further submissions by the parties." (Doc. 138).[2] Through a Stipulation and Order dated January 15, 2020, the action was dismissed as to defendant Hecht on an individual basis. (Doc. 352). The Plaintiffs thereafter filed their Motion for Attorneys' Fees and Costs on May 8, 2020. (Doc. 367).[3] On May 20, 2020, defendants

---

[2] The Court notes that the Plaintiffs "do not seek an award of attorneys' fees against other Defendants, including Aneleh Christine Dayer, Marivic Berman, and Gregory Scott Hecht individually ... but have reserved their rights to seek further relief against such other Defendants if, for example, proceeds of the scam are determined to be in their possession." (Doc. 367 at 1, n.1).

[3] The Plaintiffs initially filed a Court-ordered status report on January 30, 2020, through which they "respectfully request[ed] 45 days to file [] a motion for attorneys' fees and costs" once the matter was dismissed as to defendant Hecht. (Doc. 356 at 2-3). The Plaintiffs subsequently filed several requests between January and May 2020 for extensions to file their motion, and the Court granted these requests leading to the Plaintiffs' final filing. *See* (Docs. 357 – 365).

Donald Dayer and Katherina Dayer, (the "Responding Defendants"), filed a response to the Plaintiffs' Motion for Attorneys' Fees and Costs.  (Docs. 368, 370).

### III. STANDARD OF REVIEW

This Court, as part of the Judgment in Plaintiffs' favor that granted relief in the amount of $641,276.40, already established that the granting of attorneys' fees and costs is appropriate and that such amounts would be determined following "submission[s] by the parties."  (Doc. 138).  Therefore, this Court need not determine if the Plaintiffs were successful or whether attorneys' fees should be granted but must instead assess what is a "reasonable fee" in this specific context and whether the requested fees were appropriate.

To assess a "reasonable fee," the reviewing court must calculate the "lodestar amount," which reflects "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Through these calculations, the lodestar method yields a fee that is presumptively reasonable.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  In *Hensley*, the Supreme Court explained that the lodestar calculation:

> provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly. The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his

fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Copeland v. Marshall*, 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley*, 461 U.S. at 433-34.

In support of a lodestar calculation, the party seeking attorney's fees thus has the burden to prove that its request for attorney's fees is reasonable by submitting evidence supporting the reasonableness of both the hours it expended throughout the litigation and the rate it applied per hour. *Id.* at 433. For the claimed fee rate, the fee applicant must provide "reference to 'the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity.'" *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 360-61 (3d Cir. 2001) (quoting *Student Pub. Interest Research Group v. AT&T Bell Labs*, 842 F.2d 1436, 1450 (3d Cir. 1988)). "The Court should consider the experience and skill of the prevailing party's attorney[] and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Watcher v. Pottsville Area Emergency Med. Serv., Inc.*, 559 F.Supp.2d 516, 521 (M.D. Pa. 2008). "[I]n most cases, the relevant rate is the prevailing rate in the forum of the litigation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005).

The reviewing court may not set an attorney's fees based on a generalized sense of what is usual and proper but "must rely upon the record." *Smith v. Philadelphia Hous.*

*Auth.*, 107 F.3d 223, 225 (3d Cir. 1997) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1506 (3d

Cir. 1996)).  Furthermore, the reasonableness of the hourly rate and hours expended may

be rebutted by the party opposing the request for attorney's fees.  Specifically,

> [t]he party seeking attorney's fees has the burden to prove that its request for
> attorney's fees is reasonable. To meet its burden, the fee petitioner must
> "submit evidence supporting the hours worked and rates claimed." *Hensley v.*
> *Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In
> a statutory fee case, the party opposing the fee award then has the burden to
> challenge, by affidavit or brief with sufficient specificity to give fee applicants
> notice, the reasonableness of the requested fee. *Bell v. United Princeton*
> *Properties, Inc.*, 884 F.2d 713 (3d Cir.1989). The district court cannot "decrease
> a fee award based on factors not raised at all by the adverse party." *Id.* at 720;
> *see Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir.1985),
> vacated on other grounds, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731,
> reinstated, 807 F.2d 49 (3d Cir.1986), cert. denied, 481 U.S. 1049, 107 S.Ct.
> 2179, 95 L.Ed.2d 836 (1987). Once the adverse party raises objections to the
> fee request, the district court has a great deal of discretion to adjust the fee
> award in light of those objections. *Bell*, 884 F.2d at 721.

*Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).  In contrast, "when 'the

[applicant] has met his *prima facie* burden under the community market rate lodestar test,

and the opposing party has not produced contradictory evidence, the district court may not

exercise its discretion to adjust the requested rate downward.'" *Watcher*, 559 F.Supp.2d at

521 (quoting *Ridley v. Costco Wholesale Corp.*, 217 F.App'x. 130, 139 (3d Cir. 2007)); *see*

*also City of Scranton v. Davis*, 2018 WL 3126443, at *3 (M.D. Pa. June 26, 2018).

## IV. ANALYSIS

To determine a reasonable fee, the Court must establish to what degree the hours

billed by the Plaintiffs' attorneys and paralegals in this matter were reasonable and

thereafter determine what would reflect a reasonable hourly rate for these attorneys and paralegals. *Hensley*, 461 U.S. at 433.  The Court, however, must first address certain procedural objections raised by defendants Donald Dayer and Katherina Dayer in their response to the Plaintiffs' Motion.  (Docs. 368, 370).

## A. Procedural Barriers to the Granting of Attorneys' Fees and Costs

In their response to the Plaintiffs' Motion for Attorneys' Fees and Costs, defendants Donald Dayer and Katherina Dayer contend that the Plaintiffs' Motion was untimely, attorneys' fees and costs should not be compounded with treble damages, and joint and several liability for any attorneys' fees and costs be denied.  (Doc. 368).  The Court will therefore address these issues in turn.

### a. Timeliness of the Plaintiffs' Motion for Attorneys' Fees and Costs

The Responding Defendants contend that attorneys' fees and costs should be denied as the Plaintiffs' request "is well beyond the time frame contemplated by" the procedure deadlines within Rule 54 of the Federal Rules of Civil Procedure.  (Doc. 370 at 3).  Rule 54 requires that a motion for attorney's fees and costs be filed no later than fourteen days after entry of judgment "[u]nless a statute or a court order provides otherwise." Fed. R. Civ. P. 54(2)(A).  "Congress added the 'fourteen day deadline to Rule 54 in order to provide notice to the non-movant before the time to appeal expires; ... and ... resolve fee disputes efficiently while the services performed are freshly in mind.'" *Shaw v.*

*Cumberland Truck Equipment Co.*, 2012 WL 1130605, at *2 (M.D. Pa. Mar. 30, 2012) (citing *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 227 (2d Cir. 2004)).

A Judgment was filed by the Court on September 26, 2016, in favor of Plaintiffs Francis Trickel and Mary Trickel against defendants Discount Gold Brokers, Inc., Discount Metal Brokers, Inc., Michael Scott Berman, Marivic Berman, Donald L. Dayer a/k/a Lee Dayer, Katherina Dayer, Aneleh Christine Dayer, Robert Figaro, and Gregory S. Hecht, Inc. "in the amount of $641,276.40, plus costs and attorneys' fees to be determined at a later date following further submissions by the parties." (Doc. 138). In addition, this Court ordered that the Judgment Defendants "provide a full, complete, and accurate financial accounting of their affairs within 30 days of the date of [its] Order." (Doc. 139). The Defendants, with the exception of defendant Figaro, failed to submit documents pursuant to the Order, which forced the Plaintiffs to file a Motion to secure compliance. (Doc. 156). Thereafter, substantial efforts were made to bring the Defendants before this Court so the Defendants could show cause as to why they should not be held in contempt for failure to comply with the Order for financial accounting. (Doc. 200). The Court was eventually forced to issue bench warrants directing the U.S. Marshals Service to take the Judgment Defendants into custody until they complied with the Court's Order to provide a financial accounting. (Docs. 225-228). On March 7, 2018, the Court determined that the Judgment Defendants had finally complied with the Court's Order for a full financial accounting and had purged themselves of civil contempt. (Doc. 303).

On January 16, 2020, the parties entered into a Stipulation and Order by which the action against Defendant Hecht, in his individual capacity, was dismissed pursuant to Federal Rule of Civil Procedure 41(a)(2). (Doc. 352). Following the dismissal of defendant Hecht, in conjunction with the submission of the Judgment Defendants' financial accounting, the Plaintiffs, in accordance with a Court Order, filed a Status Report that included a request for forty-five days in which to file a motion for attorneys' fees and costs. (Doc. 356). The Court subsequently filed an Order granting the Plaintiffs' request and ordering that they file their motion for fees within forty-five days. (Doc. 357). The Plaintiffs eventually filed their Motion for Attorneys' Fees and Costs on May 8, 2020, after making several requests for further extensions of time to file their Motion, all of which were granted. (Doc. 367). Through these motions and orders, the Plaintiffs maintained open communication with the Court and Defendants and ensured that they entered their request for fees and costs when directed to do so by the Court. *See* (Doc. 365) (Order granting the Plaintiffs time to file their Motion for Attorneys' Fees and Costs). Accordingly, the Plaintiffs filed their Motion within the deadline set by the Court. The Plaintiffs' Motion was thus timely.

### b.  Availability of Attorneys' Fees in Addition to Treble Damages

In addition to objections towards certain costs and fees requested by the Plaintiffs, defendants Donald and Katherina Dayer contend that the Plaintiffs should not be granted attorney fees and costs when they have already received treble damages. (Doc. 370 at 2)

(citing *Klinger v. State Farm Mutual Automobile Insurance Co.*, 115 F.3d 230 (3d Cir. 1997)).

RICO establishes a private cause of action for individuals injured, either directly or indirectly, by racketeering activity. 18 U.S.C. § 1964(c) (citing 18 U.S.C. § 1962). Specifically, Section 1964 provides that:

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee...

18 U.S.C. § 1964. In RICO matters, protections provided by the statute are to be "read broadly." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985). Courts have found this to be true not only through the statute's "self-consciously expansive language and overall approach," but also in Congress's "express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'" *Id.* (citing Pub.L. 91–452, § 904(a), 84 Stat. 947) (citation omitted). It will thus be accepted that such a liberal application would apply to a plaintiff's ability to obtain both treble damages and attorney's fees.

As the Plaintiffs point out, the Court's previous Order "expressly awarded both treble damages and attorneys' fees and costs." (Doc. 371 at 11); *see also* (Doc. 138) (Judgment entered in Plaintiffs' favor "in the amount of $641,276.40, plus costs and attorneys' fees). Furthermore, as set forth within the language of the statute, such an award under Section 1964 is not only appropriate, but the Plaintiffs are "statutorily entitled to treble damages, costs and attorney's fees." *Carter Footwear, Inc. v. Graystone World-Wide, Inc.*, 2007 WL

4443329, at *6 (M.D. Pa. Dec. 18, 2007) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1143, 1187 (3d Cir. 1993)).  Plaintiffs will thus be awarded attorneys' fees and costs.

### c.  Joint and Several Liability for Attorneys' Fees and Costs

Defendants Donald and Katherina Dayer further argue that the Plaintiffs' request for joint and several liability as to attorneys' fees and costs should be denied.  (Doc. 368 at 4). To establish a civil claim under the RICO standard, a plaintiff "must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Id.* (citing *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)); 18 U.S.C. § 1962(c).  In criminal RICO forfeiture cases, "the nature of the RICO offense mandates joint and several liability." *State Farm Mut. Auto. Ins. Co. v. Lincow*, 444 F. App'x 617, 621-22 (3d Cir. 2011) (citing *Fleischhauer v. Feltner*, 879 F.2d 1290, 1301 (6th Cir. 1989); *United States v. Caporale*, 806 F.2d 1487, 1506-09 (11th Cir. 1986); *United States v. Benevento*, 663 F.Supp. 1115, 1118-19 (S.D.N.Y. 1987)); *but see Honeycutt v. U.S.*, 137 S.Ct. 1626, 1632 (2017) (joint and several liability limited to tainted property in criminal drug conspiracy cases under §853).  Likewise, the nature of civil RICO cases would mandate joint and several liability where defendants work in concert to further racketeering activity.  *Liberty Bell Bank v. Roger*, 726 F.App'x 147, 150 (3d Cir. 2018).

It remains undisputed that Donald and Katherina Dayer were integral to the Defendants' racketeering activity, and their efforts were intertwined with those of the other defendants.  *See* (Doc. 1).  The Court further notes that the Judgment entered in this matter

13

was against all defendants, including the Responding Defendants, with the sole exception of defendant Hecht, individually. (Doc. 138). Separating the Responding Defendants from the other Judgment Defendants solely for the execution of attorneys' fees and costs would thus create an unnecessary schism and make it more difficult for the Plaintiffs to recover the costs and fees awarded. The Responding Defendants' request that this Court reject the application of joint and several liability as to attorneys' fees and costs will therefore be denied. [4]

## B. Calculation of a Reasonable Fee

As set forth above, to assess a "reasonable fee," the reviewing court must calculate the "lodestar amount," which reflects "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This Court will

---

[4] Though the Responding Defendants do not make a clear argument to support such a contention, the Plaintiffs also address any insinuation raised in the Dayers' briefing that post-judgment attorneys' fees and costs resulting from efforts to "enforce, or collect the Judgment by determining assets and liabilities" were improperly incurred. (Doc. 371 at 11); *see generally* (Doc. 368 at ¶ 2). Attorneys' fees and costs incurred after execution of a judgment, however, are not foreclosed. *See Banco Popular de Puerto Rico v. Gilbert*, 424 F.App'x 151, 152-53 (3d Cir. 2011) (additional post-judgment attorneys' fees and costs allowed even where pre-judgment fees and costs were already paid). For the Plaintiffs, the greater volume of hours expended following the initial judgment resulted from the inability or unwillingness of the Defendants to provide adequate accounting of their ill-begotten gains. *See* (Doc. 369 at 5) (alleging that the "Defendants engaged in obstreperous conduct that unnecessarily prolonged the case, and continue[d] to cause the location of the proceeds of the scam to be unknown and Plaintiffs' judgment to be unsatisfied"). Nevertheless, the Court rejects any assertion that may be read into the Responding Defendants' brief that the efforts by the Plaintiffs to obtain an accounting were "excessive, redundant, or otherwise unnecessary." *Interfaith Cmty. Org.*, 426 F.3d at 711. Post-judgment fees and costs would thus to be allowed.

therefore first determine to what degree the hours billed by these attorneys and paralegals were reasonable and thereafter establish what would reflect a reasonable hourly rate for the Plaintiffs' attorneys and paralegals in this matter.

### a.   Reasonableness of the Hours Expended

The Court must first examine whether the hours expended on behalf of the Plaintiffs in accordance with the issues presented and the complexity of the matter were reasonable. To establish that hours expended on legal services were justifiably billed, attorneys are required to record their hours with "sufficient specificity to allow the district court to determine if the hours claimed are reasonable for the work performed." *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d 1031 (3d Cir. 1996).  Counsel should take care to note definite hours and general activities devoted to advancing the client's interest in billing invoices, though the attorney need not document precise detail and exact minutes spent for each entry.  *Id*. at 1037-38.  When the opposing party makes a specific objection, the court must exclude those entries which are "excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183.  As a result,

> [a] prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case; rather, a court awarding fees must "decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *PIRG*, 51 F.3d at 1188 (citation omitted). Thus, in reviewing the hours claimed in a fee application, a district court must conduct a "thorough and searching analysis" to identify such charges. *Evans*, 273 F.3d at 362. The court may not reduce an award sua sponte; rather, it can only do so in response to specific objections made by the opposing party. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d

Cir. 1989). But once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request.

*Berkoben v. Aetna Life Ins. Co.*, 2014 WL 3565959, at *15 (W.D. Pa. July 18, 2014) (quoting *Interfaith Cmty. Org.*, 426 F.3d at 711).

In support of their Motion, the Plaintiffs provided an itemized statement of the hours expended on this action for both their Pennsylvania and California counsel. *See* (Docs. 367-2 – 367-15). The Responding Defendants do not object to the quality of legal assistance provided by the Plaintiffs' counsel, but instead broadly object to the Plaintiffs' Motion requesting fees and costs associated with defendants Hecht and Aneleh Dayer. (Doc. 307 at 3). The Court must also determine whether Plaintiffs' California counsel is entitled to attorneys' fees and costs.

### i. Attorneys' Fees and Costs for Plaintiffs' California Counsel

The Plaintiffs submitted a request for attorneys' fees and costs for Michael Sobkowiak of the California-based Friedman Law Group, P.C. (Doc. 367-17). Mr. Sobkowiak is an associate at the firm and was admitted to the State Bar of California in 2006. (Id. at ¶ 2). Though this litigation occurred in Pennsylvania and the Plaintiffs engaged the services of a Pennsylvania-based law firm, Berkowitz Klein, LLP, the Plaintiffs claim that Sobkowiak and the Friedman Law Group assisted the Plaintiffs by "serving as Berkowitz Klein's local counsel in California to assist with investigating the Discount Gold scam, taking discovery of parties in California, sponsoring Attorney Klein's *pro hac vice*

admission in California, and domesticating, registering and/or preserving the judgments of this Court entered in favor of Plaintiffs and against Defendants." (Doc. 367 at 3-4).

Within the Middle District of Pennsylvania, "[i]n order to practice in this court, an attorney must be admitted to practice under [the local] rules." Local R. Civ. P. 83.8. In accordance with the Rules, an attorney may apply for admission to practice through a general petition for admittance or a *pro hac vice* application. *Id.* To this point, however, neither Sobkowiak nor any other attorney affiliated with the Friedman Law Group has filed a notice of appearance, applied for *pro hoc vice* status, or shown any involvement in this litigation. Instead, the Plaintiffs claim that Berkowitz Klein "*consulted* with the law firm Friedman Law Group, P.C. in Los Angeles ('Friedman'), who the Trickels agreed to engage to assist Berkowitz Klein, LLP in the prosecution of this matter against Defendants." (Doc. 367 at 3) (emphasis added).[5]

For purposes of determining whether attorney's fees and costs should be granted, courts in the Third Circuit have differentiated between attorneys who improperly take an active role in litigation practice in opposition to the local rules and those who have merely acted as consultants and are entitled to a small percentage of the overall award. In *Bilazzo*

---

[5] Though the Third Circuit has held that "a district court can depart from the strictures of its own local procedural rules" when certain criteria are satisfied, the Court does not consider the current circumstances as requiring such a departure. *See United States v. Eleven Vehicles, Their Equipment & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) (departure allowed where: (1) the court has a "sound rationale" for departure, and (2) the departure would "not unfairly prejudice a party who has relied on the local rule to [its] detriment").

*v. Porfolio Recovery Associates, LLC.*, the court recognized that a consultant "whose work product contributes to the results obtained in th[e] case" may recover a reasonable fee so long as it does not go beyond "motions, preparing memos, editing documents, and conducting legal research." 876 F.Supp.2d 452, 467 (D.N.J. 2012) (internal citation omitted). The court in *Bilazzo*, applying a five-factor test, established that an attorney not admitted to the jurisdiction's bar may be considered a consultant rather than an active participant in a litigation where the attorney:

> (1) refrains from direct contact with the client ...;
> (2) refrains from any significant contact with opposing counsel ...;
> (3) does not sign pleadings or motions filed with the court, and does not draft a substantial portion of the pleadings-specifically the complaint;
> (4) engages almost exclusively in activities such as reviewing motions, preparing memos, editing documents, discussing litigation strategy with lead counsel, conducting legal research, and the like; and
> (5) records only a modest number of hours during the course of litigation as compared to that of lead counsel and other attorneys admitted to practice in the relevant jurisdiction.

*Id.* at 464. Analyzing cases from other circuits, the court in *Gsell v. Rubin and Yates, LLC*, found broad reliance on these factors, though "[t]he weight that each factor commands necessarily depends on the facts of the underlying case." 41 F.Supp.3d 443, 450 (E.D. Pa. 2014) (citing *Bilazzo*, 876 F.Supp.2d at 464-65; *Winterrowd v. American Gen. Annuity Ins.*, 556 F.3d 815, 824 (9th Cir. 2009); *Dietrich Corp. v. King Resource, Co.*, 596 F.2d 422, 426 (10th Cir. 1979); *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 165 (2d Cir. 1966); *Krapf v. Nationwide Credit Inc.*, 2010 WL 426144, at *3 (C.D.Cal. Oct. 21, 2010)).

In differentiating between an attorney acting as the clear legal representative of a party to the litigation and an attorney acting as a consultant, the court in *Winterrowd* found that the distinction lies where the "admitted attorney has 'vouched' for the work of the supporting actors and has 'acted as a filter' between the supporting contributors and the court." *Gsell*, 41 F.Supp.3d at 449 (citing *Winterrowd*, 556 F.3d at 823). As a result, the court reasoned that an out-of-state consultant may recover reasonable fees for his or her assistance, just as courts have "permitted fee recovery for the work of paralegals, database managers, legal support, summer associates, and even attorneys who have yet to pass the bar." *Winterrowd*, 556 F.3d at 824-25. Attorneys' fees and costs, however, will not be granted where an attorney is practicing unfiltered without first being admitted. *See Gsell*, 41 F.Supp.3d at 449; *see also In re Mitchell*, 901 F.2d 1179, 1184-86 (3d Cir. 1990) (discussing different undefined interpretations as to what constitutes the "practice of law").

Upon review of the invoices submitted by the Friedman Law Group, it appears clear that Sobkowiak was not acting merely as a consultant but took an active role in litigation efforts. Sobkowiak consistently provided services that went far beyond those enumerated in *Bilazzo* for a consultant, including maintaining contact with both his clients and opposing counsel, engaging in various communications with the court, drafting pleadings such as his clients' complaint, and attending both status conferences and hearings on the clients' behalf. *See* (Docs. 367-9 – 367-12). Furthermore, though the Friedman Law Group may not have acted as the primary counsel for the Plaintiffs in the current matter, they invoiced

roughly twenty percent of the overall hours billed even as the case was litigated in the
Middle District of Pennsylvania.[6]  (Id.); *see also* (Doc. 367 at 5-6) (the Friedman Law Group
conducted over 470 hours of work on behalf of the Plaintiffs, as compared to roughly 1,850
hours billed by Berkowitz Klein).  Plaintiffs' California counsel therefore are not entitled to
attorneys' fees and costs.

### ii.  Attorneys' Fees and Costs for Claims Against Defendant Hecht

The Responding Defendants, citing *Rode v. Dellaciprete*, state that "the Third Circuit
Court of Appeals [has] held that a defendant should not be required to compensate a
plaintiff for attorney hours devoted to the case against other defendants who were found not
to be liable." (Doc. 370 at 4).[7]  Instead, "where a plaintiff prevails on one or more claims but
not on others, fees shall not be awarded for time that would not have been spent had the

---

[6] It must also be acknowledged that a review of the Friedman Law Group's invoices
indicate that work conducted on behalf of the Plaintiffs was seemingly not for the present
matter but for the bankruptcy matter against the Dayer defendants in California.  (Doc. 367-
17 at 2) (the Friedman Law Group was allegedly "engaged in significant efforts to protect
the Trickels' interest as a creditor in the bankruptcy cases of Donald Lee Dayer and
Katherina Dayer ... and Aneleh Dayer").  Such an interpretation is further supported by the
Plaintiffs' own assertions that the Friedman Law Group appeared for conferences that
occurred in a different jurisdiction, drafted filings that were not filed with this Court, and
conducted research for bankruptcy issues that were not in question here.  *See* (Docs. 367-9
– 367-12).  Therefore, even if Sobkowiak and the Friedman Law Group were merely acting
as consultants, the Court could not rightfully allow attorneys' fees and costs to be granted
for work completed in an entirely separate matter.

[7] Though the Responding Defendants fail to articulate a clear argument as to whom
such a limitation may apply, it is noted that the claims raised against defendant Hecht,
individually were eventually dismissed via a stipulation.  (Doc. 352).

unsuccessful claims not been pursued." *Lanni v. New Jersey*, 259 F.3d 146, 151 (3d Cir. 2001) (citing *Hensley*, 462 U.S. at 436-37). When the prevailing party has thus only succeeded on some claims, the court must address whether the unsuccessful claims were sufficiently unrelated to the successful claims and whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Hensley*, 461 U.S. at 434-35 ("[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim"). It must be recognized, however, that separate claims may "involve a common core of facts or will be based on related legal theories." *Id.* at 435. In such cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.*

The Plaintiffs contend that "none of the Defendants were found 'not to be liable.'" (Doc. 371 at 10). Nevertheless, though the Plaintiffs do not seek attorneys' fees or costs from him individually, (Doc. 369 at 1, n.2), they do seek fees and costs incurred pursuing claims against defendant Gregory Hecht even as such claims were dismissed via a stipulation, (Doc. 352). Though the Plaintiffs may be correct in asserting that "none of the Defendants were found 'not to be liable,'" the Plaintiffs are not entitled to attorneys' fees and costs incurred in pursuing unsuccessful claims. *Lanni*, 259 F.3d at 151. Attempting to discern the underlining goals of or issues addressed by legal counsel through the analysis

of invoices may not be always be a scientific endeavor. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("trial courts need not, and indeed should not, become green-eyeshade accountants" as the "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection"). In this instance, however, the Court feels that it is able to make a reasonable assessment of the Plaintiffs' invoices and properly parcel out hours directed towards unsuccessful claims. *See* (Docs. 367-2 – 367-8).

The Court will therefore separate invoice entries reflecting legal assistance by the Plaintiffs' counsel directed solely against defendant Hecht from entries involving work expended against any other defendant or in the interest of the litigation as a whole. *Lozano v. City of Hazleton*, 2015 WL 5895545, at *12 (M.D. Pa. Oct. 6, 2015) (proposing that courts may deduct hours expended on unsuccessful claims where possible); *Hensley*, 461 U.S. 424, 436-37 ("[t]here is no precise rule or formula for making these determinations ... [but] [t]he district court may attempt to identify specific hours that should be eliminated"). Upon review of the Plaintiffs' invoices, the Court has determined that, conservatively, 211.4 hours invoiced by Berkowitz Klein were related to the litigation of claims and issues pertaining solely to defendant Hecht, individually. *Id*. Of those hours, 194.6 hours were attributed to attorney Robert Klein, while the remaining 16.8 hours were attributed to one of Berkowitz Klein's paralegals. *Id*. Expenses invoiced by the firm totaling $423.80 were likewise determined to be related solely to the litigation of claims against defendant Hecht,

individually.  The Court will therefore deduct these hours and costs from those requested by the Plaintiffs.

### iii.  Attorneys' Fees and Costs for Claims Against Defendant Aneleh Dayer

The Responding Defendants further object to the awarding of attorneys' fees and costs "for efforts against Co-Defendant Aneleh Christine Dayer."  (Doc. 370 at 5). Defendant Aneleh Dayer was not only a defendant in this matter but was also a named debtor in a Chapter 7 bankruptcy in the Central District of California, case number 2:18-BK-10337-WB.  On April 30, 2018, defendant Dayer was discharged by the bankruptcy court in accordance with 11 U.S.C. §727, and an Order of Discharge was filed in this Court on May 4, 2018.  (Doc. 319).  According to the Order, certain debts held by defendant Dayer were discharged and creditors were foreclosed from collecting such debts.  (Id.).  Therefore, though she was a named defendant and the Plaintiffs' request for attorneys' fees and costs include fees and costs associated with the litigation of claims against defendant Dayer, the Plaintiffs "do not seek an award of attorneys' fees against ... Aneleh Christine Dayer."  (Doc. 138); *see also* (Doc. 369 at 1, n.2).[8]

---

[8] Though the Plaintiffs do not seek to recover attorneys' fees and costs from defendant Aneleh Dayer, the Court notes that pursuant to 11 U.S.C.A. §523(a)(2)(A), "[a] discharge under section 727... does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  Courts have also found that judgments in RICO cases may "establish[] the 'actual' and the 'fraud' components of an actual fraud claim under § 523(a)(2)(A)."  *In re Kaplan,* 2021 WL 3890571, at *5

The Order of Discharge by the California bankruptcy court, however, does not negate the fact that Ms. Dayer was found liable in accordance with the Court's Judgment on September 26, 2016.  *See* (Doc. 138).  As such, the successful efforts on the part of Plaintiffs' counsel to litigate claims against Ms. Dayer and the costs associated with such efforts cannot simply be discarded merely because Ms. Dayer's debts were discharged in bankruptcy.  Instead, as the general principle of joint and several liability provides, the costs and fees owed to the Plaintiffs stemming from legal work directed towards successful claims against defendant Aneleh Dayer will be the burden of the other defendants, who may later attempt to extract payment from Ms. Dayer.  *See In re Pacor, Inc.*, 110 B.R. 686, 691 (E.D. Pa. 1990) (a "joint tortfeasor must bear the burden of the entire debt if an injured party cannot recover from the other joint tortfeasor" discharged in bankruptcy).  The incurred costs and fees requested by Plaintiffs' counsel for work against defendant Aneleh Dayer with therefore be granted.

### b.  Reasonable Hourly Rate

In support of a lodestar calculation, the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable by submitting evidence supporting the reasonableness of both the hours it expended throughout the litigation and the rate it

---

(Bankr. E.D. Pa. Aug. 30, 2021) ("the portion of the Judgments representing ... attorneys' fees and expenses awarded to the Plaintiffs in connection with their successful RICO claims, for which the Debtors are jointly and severally liable, are also nondischargeable pursuant to § 523(a)(2)(A)").

applied per hour.  *Hensley*, 461 U.S. at 433.  The reviewing court may not set attorney's

fees based on a generalized sense of what is usual and proper but "must rely upon the

record."  *Smith*, 107 F.3d at 225 (quoting *Coleman*, 87 F.3d at 1506).  It is established,

however, that "[o]nce the [fee applicant] has made the prima facie showing with respect to

the appropriate hourly rate, that rate may be contested, 'but only with appropriate record

evidence. In the absence of such evidence, the [applicant] must be awarded attorneys' fees

at her requested rate.'"  *Rode*, 892 F.2d at 1183 (quoting *Evans*, 273 F.3d at 361 (quoting

*Smith,* 107 F.3d at 225)).

"Hourly rates that were set for a specific attorney in previous court decisions do not

generally constitute record evidence unless those rates were set for the same attorney and

for the same type of work of a contemporaneous period."  *Katona v. Asure*,  2019 WL

636979, at *3 (M.D. Pa. Feb. 14, 2019) (citing *Smith,* 107 F.3d at 226); *Black Grievance*

*Comm. v. Phila. Elec. Co.*, 802 F.2d 648, 652 (3d Cir. 1986), vacated on other grounds, 483

U.S. 1015 (1987)).  Instead, "reasonable fees are to be calculated according to the

prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895

(1984).  For its part, Plaintiffs' Pennsylvania counsel seeks an attorney hourly rate of $275

and a $110 hourly rate for paralegals.[9]

---

[9] The Court notes that Plaintiffs' California counsel was seeking a blended attorney
hourly billing rate of roughly $400 an hour and an hourly paralegal rate of $150 based on
the traditional rates of the Friedman Law Group and the rates utilized by bankruptcy
attorneys in the Central District of California.  *See* (Doc. 367-17 at 4-5) ("[i]n [his] considered
opinion, [Sobkowiak's] $400 hourly rate in the Trickel matter was below market rate for

### i. Pennsylvania Counsel's Fee Rate

In support of their Motion for Attorneys' Fees and Costs, the Plaintiffs submitted a declaration by their Pennsylvania-based counsel, Robert A. Klein of the law firm Berkowitz Klein, LLP. (Doc. 367-1). In this declaration, attorney Klein sets forth his credentials as a "senior member of the [Pennsylvania] Bar," admitted in 1985 and practicing as a commercial litigator for over thirty years following a clerkship in the Eastern District of Pennsylvania. (Doc. 367-1 at 7). Based on his experience, Klein asserts that his "standard hourly rate was $400 at the inception of [his] representation of the Trickels, and is currently $425," but that his firm "agreed to substantially reduce [his] hourly rate for the Trickels to $275." (Doc. 367-1 at 2).[10] Nevertheless, even as the "starting point" for determining a reasonable hourly rate

---

similar type representation in the Los Angeles area"); *see also* (Doc. 367-1 at 5) (arguing that Sobkowiak's fees reasonable as compared to "work of similar complexity in Los Angeles, California"). Though the work conducted by Sobkowiak and the Friedman Law Group was conducted in California, in most cases, "the relevant rate is the prevailing rate in the forum of the litigation." *Interfaith Cmty. Org.*, 426 F.3d 704. Therefore, "an 'out-of-town lawyer would receive not the hourly rate prescribed by his district but rather the hourly rate prevailing in the forum in which the litigation is lodged.'" *Id.* (quoting Report of the Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237, 261 (1986)). If California counsel was thus entitled to attorneys' fees and costs, the requested rate must typically conform to the rates of the forum under this "forum rate rule." *See id.* at 705 (setting forth the parameters of the forum rate rule and its exceptions). Nevertheless, the Court will not determine what a reasonable rate would be as Plaintiffs' California counsel is not entitled to fees and costs. *See supra* Section IV(B)(a)(i).

[10] Klein's declaration also cites two separate cases in the Eastern District of Pennsylvania in which Klein's clients raised successful fraud claims resulting in awards for the plaintiffs. *See* (Doc. 367-1 at 2, n.1) ("*Titelman v. Rite Aid Corporation*, U.S. Dist. Ct., E.D. Pa., Civ. A. No. 00-2865, arising out of the Rite Aid securities fraud scandal and resulting in a substantial settlement for the plaintiff, and *Circle Business Credit, Inc. v.*

is generally "the attorney's usual billing rate, [] this is not dispositive." *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 374 (3d Cir. 2004) (citing *Maldonado v. Houstoun*, 256 F.3d 181, 184-85 (3d Cir. 2001)).  Courts will therefore look to record evidence submitted by the parties and rates previously awarded in the Middle District of Pennsylvania for guidance.

Over a decade ago, rates for attorneys in the Middle District of Pennsylvania with over two decades of experience were considered capped around $300 an hour, whereas an hourly rate as high as $475 was found reasonable for an experienced attorney in a complex matter around the same time.  *Compare Overly v. Global Credit & Collection Corp., Inc.*, 2011 WL 2651807, at 5 (M.D. Pa. July 6, 2011) (an "assessment of attorney fee award hourly rates approved by the courts in this district suggests that attorneys" with twenty years of experience "typically command a fee rate of between $200 and $300") *with Benjamin v. Dep't of Pub. Welfare of Pennsylvania*, 807 F.Supp.2d 201, 211 (M.D. Pa. 2011) (finding an uncontested request by attorneys with thirty-three, twenty-eight, and twenty-five years of experience for hourly rates of $475, $450, and $400 per hour, respectively, reasonable) (reversed on other grounds).  As reflected by such variations, a reasonable hourly rate is not set in stone but instead fluctuates as time passes and the scope, quality, and

---

*Becker*, U.S. Dist. Ct., E.D. Pa., Civ. A. No. 92-3177 (*In re Lila, Inc. t/a Becker & Associates and Rhino Copy, Debtors*, U.S. Bankr., E.D. Pa. No. 91-10059S), resulting in judgments under RICO in excess of $150 million against officers and directors of Lila, Inc. in favor of plaintiffs, the Chapter 7 Trustee for the debtor and several finance companies which were defrauded").  Nonetheless, cases from outside this district do not necessarily speak to the current market rate of the forum.

requirements of legal representation evolve.  *Souryavong v. Lackawanna Cty.*, 159 F.Supp.3d 514, 529 (M.D. Pa. 2016) ("past rates are not necessarily reflective of the 'current' market rate").

To establish the hourly rate generally charged by attorneys of equivalent skill and experience performing work of similar complexity, the Plaintiffs submitted declarations by attorneys Guy A. Donatelli of the law firm Lamb McErlane, P.C., (Doc. 367-18), and Stephen G. Rhoads of the law firm Montgomery, McCracken, Walker & Rhoads, LLP, (Doc. 367-19).  In accordance with these declarations, the Plaintiffs argue that as Donatelli and Rhoads, both attorneys practicing for over thirty years in Pennsylvania and in good standing with the bars of the Third Circuit and the Middle District of Pennsylvania, maintain hourly rates approaching or exceeding $400 per hour, the discounted rate of $275 per hour for Klein's services was reasonable.  (Doc. 367 at 10).

In comparison, the prevailing market rates in this district have evolved over time from a range between $150 and $300 an hour ten years ago to include rates for experienced counsel far exceeding the rate requested here.  *See Overly*, 2011 WL 2651807, at 5 (citing cases from 2006 through 2010 establishing attorney rates between $200 and $300 per hour, with rates in the low $300s "the highest hourly rate[s] prevailing in this particular legal market"); *Benjamin*, 807 F.Supp.2d at 211 (hourly rates of $400, $450, and $475 per hour for attorneys with twenty-five to thirty-three years of experience found reasonable); *Beattie v. Line Mountain School Dist.*, 2014 WL 3400975, at *10 (M.D. Pa. July 10, 2014)

(establishing a reasonable rate range for the "Williamsport vicinage" from $150 to $325 per hour); *Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, 2014 WL 2860863, at *11 (M.D. Pa. June 23, 2014) (hourly rate of $450 reasonable for lawyer with twenty years of specialized patent experience); *Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, 2016 WL 1076910, at *5 (M.D. Pa. Mar. 18, 2016) (finding that rates for experience attorneys in the forum typically range from $180 to $325 an hour); *Borrell v. Bloomsburg University*, 207 F.Supp.3d 454, 510-511 (M.D. Pa. 2016) (hourly rate of $375 reasonable for an attorney with roughly thirty years of experience); *Toshiba Am. Med. Sys., Inc. v. Valley Open MRI*, 2017 WL 1493483, at *4 (M.D. Pa. Apr. 26, 2017) (finding that billing rates for experienced attorneys in complicated cases in this district between $215 and $350); *Metcalf v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2018 WL 6005457, at *9 (M.D. Pa. Oct. 31, 2018) (attorney fee of $300 per hour for attorney with twenty-five years of experience was reasonable); *Finnegan v. Smith*, 2019 WL 1052013, at *4 (M.D. Pa. Mar. 5, 2019) (hourly rate of $375 reasonable for attorney with thirty years of experience).[11]

---

[11] The Court recognizes that "[i]f there is evidence that the market has established different rates for different categories of legal work, the district court should assign the appropriate rate to each category." *Dee v. Borough of Dunmore*, 2013 WL 685144, at *3 (M.D. Pa. Feb. 25, 2013) (citing *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)). There appears no evidence, however, either provided by the parties or recognized under recent caselaw, that establishes a different rate should be utilized for RICO cases than other cases in this forum.

Through their submissions, the Plaintiffs have provided modest–though not extensive–support for a finding that the hourly rate of their Pennsylvania counsel is reasonably within the realm of the prevailing market rate in the community.  Though the counsel with whom the Plaintiffs attempt to equate themselves maintain offices in the Eastern District of Pennsylvania, their rates may provide a general baseline for attorney fees of attorneys with similar years of experience to Plaintiffs' counsel likewise licensed and practicing in the Middle District and the Third Circuit.  *See* (Docs. 367-18, 367-19); *see also United States ex rel. Palmer v. C&D Tech., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) (a party met its burden by "submitting some evidence to support his requested deposition fee"). Nevertheless, regardless of reliance on such assertions, the Plaintiffs' requested rate falls well within the acceptable range of prevailing rates in the forum.  *See Cmty. Ass'n Underwriters of Am., Inc.,* 2016 WL 1076910, at *5 (attorney's fee range from $180 to $325 an hour reasonable in the forum); *Toshiba Am. Med. Sys., Inc.,* 2017 WL 1493483, at *4 (billing rates for experienced attorneys historically between $215 and $350).

In contrast, the Defendants fail to provide any support from which the Court could justify a deviation from these values.  Instead, they merely "suggest a reasonable attorney fee in the range of $200.00 to $250.00 per hour."  (Doc. 370 at 4).  This is insufficient, and so the Court will accept the attorney rate requested by Robert Klein and Berkowitz Klein, LLP, which reflect a rate far below those suggested as reasonable within the Plaintiffs' declarations and those traditionally allowed in the forum.

### ii. Paralegal Fee Rate

In recent years, courts have established reasonable hourly rates for paralegals in the Middle District of Pennsylvania with a "range from $75 to $150 depending on skill and experience." *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 264 F.Supp.3d 618 (M.D. Pa. 2017) (citing *Borrell*, 207 F.Supp.3d at, 512-13 (hourly rates of $100 and $130 for paralegals with eight and seventeen years of experience, respectively, found reasonable); *Souryavong*, 159 F.Supp.3d at 530 (finding an hourly rate of $100 for a legal assistant reasonable though the assistant's qualifications were not known); *Arlington Indus., Inc.*, 2014 WL 2860863, at *13 (approving hourly rates of $120 for a paralegal with six years of experience and $130 for a paralegal with thirteen years of experience); *Dino v. Pennsylvania*, 2013 WL 6504749, at * 3 (M.D. Pa. Dec. 11, 2013) (approving an hourly rate of $150 for a legal assistant in a complex FLSA case); *Dee*, 2013 WL 685144, at *11 (approving an hourly rate of $75 for a legal assistant); *Overly*, 2011 WL 2651807, at *5 (noting that typical rates for legal assistants in the Middle District of Pennsylvania at the time were between $70 and $120 an hour)).

The Plaintiffs argue that an hourly rate of $110 for paralegals at Berkowitz Klein, LLP is reasonable. (Doc. 367 at ¶ 13). To support their requested rate, the Plaintiffs rely on the Donatelli and Rhoads declarations, which assert that Lamb McErlane, P.C. maintains hourly rates for paralegals between $85 and $90 and Montgomery, McCracken, Walker & Rhoads, LLP utilizes rates ranging from $250 and $325. (Doc. 367 at 11). Unlike Klein's

credentials as set forth in his declaration, however, the Plaintiffs fail to provide any information regarding the paralegals for whom fees have been requested and the record is void of any information regarding the experience or skill of any such individuals. (Doc. 367-1). As a result, though the declarations submitted by Donatelli and Rhoads could provide some background concerning the operations of their two firms, any comparison between the rates utilized by Lamb McErlane or Montgomery, McCracken, Walker & Rhoads and those requested here by Berkowitz Klein would thus not be practicable.

Instead, the Plaintiffs' requested paralegal rate must be weighed solely against the prevailing market rates in this district, which, as set forth above, generally ranges between $75 and $150 per hour. As it pertains, however, to rates for paralegals where the Court lacks sufficient information regarding the paralegal's credentials, and in consideration of the ever-evolving costs of the market, the rate of $110 per hour requested by Berkowitz Klein appears to reasonably conform to the rates of the forum. *See Souryavong*, 159 F.Supp.3d at 530 ($100 an hour was reasonable for legal assistant where the qualifications of the assistant were not provided to the court). The Court will therefore accept the rate requested by the Plaintiffs for the Berkowitz Klein's paralegals in calculating an overall reasonable fee.

### c.    Calculation of a Reasonable Fee

Through their Motion, the Plaintiffs requested attorneys' fees and costs in the aggregate of $738,023.65. As set forth in attorney Klein's declaration:

> The attorneys' fees incurred by Berkowitz Klein total $487,960.00, based on 1,774.4 attorney hours at the rate of $275 per hour. Paralegal fees incurred

32

by Berkowitz Klein total $8,426.00, based on 76.6 hours at the rate of $110 per hour. Expenses incurred by Berkowitz Klein total $50,387.07.

The attorney fees incurred by Friedman total $176,493.50, based on 439.8 attorney hours at rates ranging from $385 to $485 per hour. This comes to an effective hourly rate for attorneys of $401.31 ($176,493.50 divided by 439.8 hours). Paralegal fees incurred by Friedman total $4,755.00, based on 31.7 hours at rates of $125 and $175 per hour. This comes to an effective hourly rate for paralegals of $150.00 ($4,755.00 divided by 31.7 hours). Expenses incurred by Friedman total $10,002.08.

(Doc. 367-1 at ¶¶ 10, 12). Based on the findings above, the Court will use an attorney hourly rate of $275 and an hourly rate of $110 for paralegals to calculate a reasonable fee. The Court, however, will deduct the expenses and hours expended by the Plaintiffs' counsel on matters solely concerning defendant Hecht, individually, and the request by the Plaintiffs for fees and costs stemming from the work conducted by their California counsel will be denied. As a result, the Plaintiffs will be granted $490,986.27 in attorneys' fees and costs.[12]

---

[12] The attorneys' fees incurred by Berkowitz Klein's attorneys equals $434,445, based on 1,579.8 hours of work at a rate of $275 per hour. The fees incurred by Berkowitz Klein's paralegals equals $6,578, based on 59.8 hours of work at a rate of $110 per hour. Berkowitz Klein will be reimbursed $49,963.27 for expenses, which reflects a deduction of $423.80 from the firm's initial request of $50,387.07. *See Blum*, 465 U.S. at 896-97 (though there are various factors to determine how a fee should be calculated, the determination is primarily a matter committed to the discretion of the district court).

## IV. CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Attorneys' Fees and Costs will be granted in part and the Plaintiffs' will be awarded fees and costs in accordance with the Court's calculations.   A separate Order will follow.

Robert D. Mariani
United States District Judge